IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 20-299-1 |
| | : | |
| WILLIAM MACK | : | |

**MEMORANDUM**

**Marston, J.**                                                                                              **January 24, 2024**

Before the Court is Defendant William Mack's *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to § 2255. (*See* Doc. Nos. 112, 113, 117.) For the reasons discussed below, that motion is denied.

I.     **BACKGROUND**

   A.     **Underlying Facts**[1]

In May 2020, the Federal Bureau of Investigation ("FBI") received a report from a confidential source ("CS") that Mack was trafficking methamphetamine in the Philadelphia area. (Rev. PSR ¶ 15.) On this information, the FBI had the CS speak with Mack to arrange two controlled buys of methamphetamine in June and July 2020. (*Id.* at ¶ 16.) Each meeting was conducted in a similar manner. The CS and Mack, via a recorded phone line, arranged a meeting for the CS to purchase a quantity of drugs. (*Id.*) The CS was given pre-recorded buy money and equipped with an audio/video recording device, which was monitored by law enforcement during the meeting. (*Id.*) Then, at the end of each meeting, the CS met with an officer at a

---

[1] These facts are taken from the factual statement included in the revised Presentence Investigation Report ("Rev. PSR"), dated February 23, 2022, which was adopted by the Court at the Sentencing Hearing. (*See* Sent'g Tr. at 38:2–4.) This factual statement also significantly overlaps with the recitation of facts given by the Government at the change of plea hearing (Plea Hr'g Tr. at 45:5–47:22 (attached to Doc. No. 118)), which Mack stipulated was a "fair and accurate summary of what occurred" (*id.* at 49:7–12).

predetermined location and handed over the drugs, which were submitted to a laboratory for testing. (*Id.*)

The first meeting occurred on June 29, 2020. (*Id.*) The CS called Mack and ordered a quantity of methamphetamine, which Mack agreed to sell to the source for $700. (*Id.* at ¶ 17.) At Mack's direction, the CS travelled to a location in Philadelphia and parked. (*Id.* at ¶¶ 17–18.) At the meeting point, Mack exited the driver's seat of a Dodge Charger and entered the front passenger seat of the CS's vehicle, at which point, Mack gave him 27.19 grams of methamphetamine hydrochloride, actual, in exchange for $700. (*Id.* at ¶ 18–19.) Mack also told the CS that he would sell him one pound of methamphetamine in exchange for $5,800. (*Id.* at ¶ 18.)

Roughly three weeks later, on July 19, 2020, the CS and Mack spoke several times via phone to arrange the purchase of the additional pound of methamphetamine. (*Id.* at ¶ 20.) They agreed to a sale price of $6,300, and Mack instructed the CS to go to a gas station in Philadelphia. (*Id.*) Meanwhile, Mack spoke with co-Defendant Horace Johnson about securing the "crystal."[2] (*Id.*) When the CS arrived at the gas station, Mack called to confirm that the CS had the money. (*Id.* at ¶ 21.) Mack then stated that he was sending a "runner" (Johnson) to meet with the CS. (*Id.*) Approximately five minutes later, Mack placed another call to the CS, instructing him to stay on the line while Johnson walked to the CS's vehicle, at which point, Mack merged Johnson into the call. (*Id.*) Mack remained on the call throughout the transaction. (*Id.* at ¶ 22.)

During this interaction, law enforcement officers observed Johnson enter the CS's vehicle, remove the methamphetamine from his left pants pocket, and hand it to the CS. (*Id.* at ¶

---

[2] The Court is aware that "crystal" is a common term used to refer to methamphetamine of a higher purity level.

22.) The CS then gave Johnson the $6,300, and Johnson exited the vehicle, before entering a black Jeep Grand Cherokee also located in the parking lot of the gas station. (*Id*.) The CS left the location and delivered the drugs to law enforcement. (*Id*.) Laboratory testing confirmed that the drugs were methamphetamine, actual, weighing approximately 439.3 grams. (*Id.* at ¶ 23.)

### B. Mack's Indictment and Guilty Plea

On September 9, 2020, a federal grand jury returned an indictment charging Defendant William Mack with distribution of five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count I), and distribution, and aiding and abetting the distribution, of 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2 (Count II). (*See* Doc. Nos. 1, 74–75.) On September 13, 2021, Mack pleaded guilty to those charges pursuant to a plea agreement (Doc. No. 75), and the Court accepted his plea, finding, after a lengthy colloquy, that the plea was "knowing, voluntary, and intelligently made" (*see* Plea Hr'g Tr. At 52:5–13). As part of the plea agreement, Mack "voluntarily and expressly waive[d] all rights to appeal or collateral[ly] attack [his] conviction, sentence, or any other matter relating to this prosecution," including the right to bring a collateral attack under 28 U.S.C. § 2255. (Guilty Plea Agreement at ¶ 15; Doc. No. 118 at 96–97.) One relevant exception to this waiver provision was that Mack could bring a claim that "an attorney who represented the defendant during the course of the criminal case provided constitutionally ineffective assistance of counsel." (Guilty Plea Agreement at ¶ 15.b.)

### C. Advisory Sentencing Guideline Range

The Court scheduled a sentencing hearing for February 23, 2022. (Doc. No. 92.) For that hearing, the United States Probation Office prepared an Initial Presentence Investigation Report ("Initial PSR"), which calculated Mack's advisory sentencing guideline range based on an offense level of 34 and a criminal history category of VI.

3

***Offense Level Calculations.***  To calculate Mack's offense level, the probation officer first found that Mack's base offense level is 32 because the offense involved at least 150 grams but less than 500 grams of methamphetamine, actual.  (Initial PSR ¶ 31); U.S.S.G. § 2D1.1(a)(5), (c)(4).  Two levels were added for Mack's role as an organizer, leader, manager, or supervisor, resulting in an offense level of 34.  (Initial PSR ¶ 34); U.S.S.G. § 3B1.1(c).  The probation officer was required to disregard this offense level, however, because Mack qualified as a career offender.[3]  Because Mack was subject to a statutory maximum term of life imprisonment on each of his charges, the probation officer noted Mack's career offender offense level was 37.  (Initial PSR ¶ 37.)  This offense level was reduced by three levels because Mack timely accepted responsibility for his conduct, resulting in a total adjusted offense level of 34.  (*Id.* ¶¶ 38–40.)

***Criminal History Category.***  To determine Mack's criminal history category, the probation officer assigned criminal history points for each of Mack's prior adult criminal convictions:

- 3 points for a conviction for manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance (crack cocaine and marijuana).  (*Id.* ¶ 43); *Commonwealth v. Mack*, Docket No. CP-51-CR-0308681-2005 (Philadelphia Cnty. Ct. Comm. Pl.) (Mack arrested in 2005).

- 3 points for a conviction for manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance (crack cocaine and marijuana), intentional possession of a controlled substance by a person not registered, and criminal conspiracy.  (Initial PSR ¶ 44); *Commonwealth v. Mack*, Docket No. CP-51-CR-0900381-2006 (Philadelphia Cnty. Ct. Comm. Pl.) (Mack arrested in 2006).

- 3 points for a conviction for manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance (heroin).  (Initial PSR ¶ 46); *Commonwealth v. Mack*, Docket No. CP-51-CR-0008605-2013 (Philadelphia

---

[3] Mack is a career offender because he was at least 18 years old at the time of the instant offense of conviction; the instant offense of conviction is a controlled substance offense; and as discussed below, Mack has at least two prior felony conviction for a controlled substance.  *See* U.S.S.G. § 4B1.1(a).

4

      Cnty. Ct. Comm. Pl.) (Mack arrested in 2013).

- 3 points for a conviction for manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance (heroin). (Initial PSR ¶ 47); *Commonwealth v. Mack*, Docket No. CP-46-CR-000452-2013 (Montgomery Cnty. Ct. Comm. Pl.) (Mack arrested in 2013).

- 1 point for intentional possession of a controlled substance by a person not registered (PCP). (Initial PSR ¶ 48); *Commonwealth v. Mack*, Docket No. MC-51-CR-0024204-2015 (Philadelphia Cnty. Municip. Ct.) (Mack arrested in 2015).

In addition to the 13 points accumulated for these prior convictions, an additional 2 points were added to Mack's criminal history score because Mack committed the instant offense while on probation for Montgomery County Docket No. CP-46-CR-0004452-2013 and Philadelphia County Docket Nos. CP-51-CR-0900381-2006 and CP-51-CR-0008605-2013. (Initial PSR ¶ 50.) That results in a total criminal history score of 15, which correlates to a criminal history category of VI. (*Id.* ¶ 51); U.S.S.G. Chapter 5, Part A. In addition, each of the first four convictions involved a violation of 35 Pa. Cons. Stat. § 780-113(A)(30), and therefore, qualifies as a career offender predicate conviction. *See United States v. Glass*, 904 F.3d 319, 324 (3d Cir. 2018) (holding that § 780-113(a)(30) "is a 'controlled substance offense' and may serve as a predicate offense to a career-offender enhancement under § 4B1.1"); *see also* U.S.S.G. § 4A1.1(a) application n.1 ("A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period.").[4] Mack's career offender status also independently results in a criminal history category of VI. (Initial PSR ¶ 51); U.S.S.G. § 4B1.1(b).

                  \*      \*      \*

A total offense level of 34 and a criminal history category of VI results in an advisory

---

[4] The U.S. Sentencing Commission, Guidelines Manual used at sentencing was that incorporating amendments effective November 1, 2021, as there were no *ex post facto* issues

5

guideline range of 262 months to 327 months' imprisonment. (Initial PSR ¶ 104); U.S.S.G. Sentencing Table.

### D.      Sentencing Hearing

Mack was sentenced by the Court on February 23, 2022. (*See* Doc. No. 105 (Sent'g Tr.).) During that hearing, the Court ruled on Mack's objections to the Initial PSR and the parties' competing motions for a downward variance.

#### 1.      **Objection to Leadership Enhancement**

Mack objected to the Initial PSR's advisory guideline calculations to the extent that the probation officer found he committed the subject offense while acting as an organizer, leader, manager, or supervisor and applied a two-point enhancement to his offense level for that reason. (Doc. No. 93 at 8–9.)[5] The Court agreed with Mack, finding that the Government had failed to show by a preponderance of the evidence that Mack held a leadership role in the offense, rendering an enhancement on that basis inappropriate. (Sent'g Tr. at 36:4–37:7.) The Court noted, however, that striking the enhancement was largely immaterial because Mack is a career offender. (*Id.* at 38:5–8.) In short, without the leadership enhancement, Mack's starting offense level would have been a 32, *but because he is a career offender*, the Court was required to disregard that level and instead, look to the offense level required by the career offender provision, which is 37. (*Id.* at 39:24–40:23.) Subtracting three points from that level for Mack's acceptance of responsibility, the Court was still left with a total offense level of 34 and an advisory guideline range of 262 months' to 327 months' imprisonment. (*Id.*; Initial PSR ¶ 104.)

---

[5] Mack objected to the PSR on other grounds as well (*see* Doc. No. 93 at 8; PSR Addendum; Sent'g Tr. at 5:13–37:18), but those objections are not relevant to this Memorandum, so the Court does not discuss them further.

### 2. Motions for Downward Variance

Mack and the Government each moved for a downward variance. Mack argued that the advisory range was "grossly excessive, unnecessarily punitive, and [would] work to undermine the sentencing factors, not promote them." (Doc. No. 93 at 4.) He requested that the Court instead sentence Mack to a term of imprisonment that was "close to or at the 10-year mandatory minimum" term of imprisonment statutorily required for Count II. (*Id.*) The Government agreed that the advisory range was excessive under the circumstances, and likewise requested a downward variance. (Doc. No. 91 at 11–12.) But the Government argued that a term of 204 months was more appropriate given Mack's significant criminal history. (*Id.* at 1, 11–12.)

After considering the arguments raised by counsel and the § 3553(a) factors, the Court agreed that a downward variance was appropriate and granted both motions in part, imposing a term of imprisonment of 151 months. (Sent'g Tr. at 42:21–65:14, 73:25–78:16.) Accordingly, the Court imposed a sentence of 151 months' imprisonment on each Count to run concurrently, followed by 5 years of supervised release on each Count to run concurrently, and a mandatory special assessment of $200. (*Id.* at 79:1–81:18; Doc. No. 95.)

### E. Habeas Petition

The Court entered Judgment in Mack's case on February 24, 2022. (Doc. No. 95.) Because Mack did not appeal his conviction or sentence, his judgment became final for habeas purposes 14 days later, on March 9, 2022. *See United States v. Gordon*, Crim. No. 09-020-1, 2014 WL 5502817, at *1 (D.N.J. Oct. 28, 2014) ("As defendant did not file a direct appeal from his judgment and conviction, his judgment became final for § 2255 purposes fourteen days after the judgment was entered on September 19, 2011."). One year later, on March 9, 2023, Mack timely filed the pending Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255. (Doc. No. 110.)

II.     DISCUSSION

Mack challenges his conviction and sentence on the grounds that his private defense attorney, Tariq Karim El-Shabazz, Esq., rendered ineffective assistance during Mack's criminal proceedings, resulting in a denial of Mack's Sixth Amendment right to counsel. (Doc. No. 110 at 6.) Specifically, Mack argues that his conviction is unconstitutional because defense counsel erroneously refused to object to errors in the grand jury proceeding and to file pre-plea motions to suppress the Government's evidence. (Doc. No. 110 at 6–8, 12–17.) Mack also challenges his sentence, arguing that counsel rendered ineffective assistance when he failed to petition the Court to correct errors in the presentence report's calculation of the sentencing guidelines range. (Doc. No. 110 at 8–12.) The Government opposes Mack's motion. (Doc. No. 118.)

A.      Legal Standard

Under 28 U.S.C. § 2255, a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." Ineffective assistance of counsel claims, like those brought by Mack in this case, are properly raised in a § 2255 motion. *See United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) ("A § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to allege ineffective assistance of counsel.").

"The Sixth Amendment recognizes . . . the right to the effective assistance of counsel." *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). To show that counsel was constitutionally ineffective under the Sixth Amendment, a defendant must show: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Id.* at

8

687; *see also United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005) ("[A] criminal defendant may demonstrate that his representation was constitutionally inadequate by proving: (1) that his attorney's performance was deficient, i.e., unreasonable under prevailing professional standards; and (2) that he was prejudiced by the attorney's performance.").

Under the first prong, counsel's performance was deficient if they "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 432 F.3d 687. The broad phrase "effective assistance" encompasses counsel's "overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Id.* at 688. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Under the second prong, the defendant establishes prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, an "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Where the defendant entered a guilty plea, the prejudice prong considers whether "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The Third Circuit has "endorsed the practical suggestion in *Strickland* to consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *Booth*, 432 F.3d at 546 (quoting *United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005)).

B.    **Challenges to Mack's Conviction**

Mack begins by challenging his conviction, arguing that defense counsel rendered ineffective assistance during grand jury proceedings and in the weeks leading up to Mack's guilty plea. As to the grand jury, Mack asserts that counsel was ineffective because he failed to ensure Mack was present "to cross-examine witnesses" and failed to object to the prosecutor's assertion that Mack "was already a convicted felon and was presumed guilty." (Doc. No. 110 at 7–8.)[6] As to the evidence produced by the Government in the weeks leading up to his guilty plea, Mack argues that defense counsel rendered ineffective assistance because counsel refused to object to Count II, which Mack asserts was "for 500 grams or more distribution of

---

[6] The Government argues that Mack is procedurally barred from challenging the grand jury proceeding and that he waived any such challenge under his plea agreement. (Doc. No. 118 at 11–13, 15.) But that argument ignores that Mack has framed this claim as one for ineffective assistance of counsel and not as a direct challenge to the grand jury proceeding. The ineffective assistance of counsel claim is properly raised in a § 2255 motion. *Nahodil*, 36 F.3d at 326 ("A § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to allege ineffective assistance of counsel."). And an ineffective assistance claim qualifies as an exception to the guilty plea's waiver provision. (*See* Guilty Plea Agreement at 15.b.iv. ("[N]otwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding . . . that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.").)

That said, to the extent Mack intended to bring claims that target the grand jury proceeding directly, as opposed to raising them in the ineffective assistance of counsel rubric, the Government correctly notes that those claims fail. In addition to the procedural bar and waiver issues identified by the Government, any errors in the grand jury process were rendered harmless once Mack pleaded guilty to the charges in the Indictment. *See United States v. Hansel*, 70 F.3d 6, 8 (2d Cir. 1995) ("[A]ny error in the grand jury proceedings must be considered harmless in light of Hansel's guilty plea."); *United States v. Hefner*, 842 F.2d 731, 733 (4th Cir. 1988) (extending rule that errors in grand jury proceedings are rendered harmless by later jury conviction to guilty plea context because in the former context the "underlying concern . . . was whether an error existed which affected the basic determination of guilt, and here, guilt was conceded"); *Sullivan v. Goord*, No. 05-CV-6060L, 2007 WL 2746900, at *9 (W.D.N.Y. Sept. 19, 2007) ("Since Sullivan admitted to all of the factual elements of the charge against him by entering a plea of guilty, any error in the proceeding which led to his indictment is rendered harmless and is not amenable to habeas review."); *cf. United States v. Johnson*, Criminal No. 08-374, Civil No. 18-493, 2019 WL 266375, at *8 (W.D. Pa. Jan. 18, 2019) ("Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(v), a challenge to an error in the grand jury proceeding must generally be made in a motion before trial. Further, errors in a grand jury proceeding are generally rendered harmless by a subsequent guilty verdict by a petit jury.").

methamphetamine," when "the ACTUAL weight was 486 grams"; failed to object to the Government's reliance on the phone calls between Mack and the CS, during which Mack argues "there was NO discussion about drugs AT ALL"; and refused to "request a purity test with respect to actual vs. pure" weight and chemical consistency of the methamphetamine seized by police.  (Doc. No. 112 at 5.)  Mack asserts that he "pleaded with counsel to object; file a motion; whatever, in order to correct the record," but "[c]ounsel flatly refused." (*Id.*)

Mack's arguments fail because Mack's pre-plea ineffective assistance of counsel claims are precluded by his guilty plea.  *See, e.g.*, *Flowers v. United States*, 208 F.3d 213 (Table), at *5 (6th Cir. 2000) ("Flowers's failure to challenge his indictment prior to pleading guilty is fatal to his current § 2255 claim."); *Proctor v. McCarthy*, 19-CV-2988 (GBD) (JLC), 2020 WL 1149660, at *19 (S.D.N.Y. Mar. 10, 2020) ("Proctor is barred from raising his pre-plea ineffective assistance of counsel claims [related to the grand jury proceeding and indictment] because he waived them by pleading guilty"); *Hill v. United States*, Nos. 13 Civ. 1107(LAP), 11 Cr. 145(LAP), 2014 WL 104565, at *7 (S.D.N.Y. Jan. 7, 2014) ("A movant's unconditional guilty plea waives all claims of ineffective assistance of counsel relating to events prior to the guilty plea *that did not affect the voluntariness of his plea*." (emphasis added)).

As the Supreme Court explained in *Tollett v. Henderson*:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [the range of competence demanded of attorneys in criminal cases].
>
> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no

11

> matter how peripheral such a plea might be to the normal focus of counsel's inquiry. And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings. . . . A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement, such as unconstitutional grand jury selection procedures, might be factually supported.

411 U.S. 258, 267–68 (1973) (citations omitted); *see also Flowers*, 208 F.3d, at *3 (citing *Tollett* for "the familiar rule that a guilty plea made on the advice of competent counsel results in waiver of constitutional claims").

Accordingly, "to obtain his release on federal habeas under these circumstances, [the habeas petitioner] must not only establish the [underlying constitutional violation], he must also establish that *his attorney's advice to plead guilty* without having made inquiry into [that potential violation] rendered that advice outside the range of competence demanded of attorneys in criminal cases." *Tollett*, 411 U.S. at 268 (quotation marks omitted) (emphasis added); *see also Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (holding that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel" and "the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett*"). In addition, the petitioner must show, under *Strickland*'s prejudice prong, that "counsel's constitutionally ineffective performance affected the plea process," meaning, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Nahodil*, 36 F.3d at 327 ("Prejudice results from ineffective

assistance of counsel at a plea hearing if there was a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty but instead would have insisted on proceeding to trial.").

Here, the Court need not consider whether counsel rendered deficient performance when he refused to challenge the validity of the Indictment or the evidence produced by the Government, because either way, Mack has failed to show that he was prejudiced by those alleged failures. Notably, Mack does not argue that his guilty plea was unknowing or involuntary because defense counsel declined to pursue issues related to the grand jury proceeding or because counsel refused to file pre-plea evidentiary motions. Indeed, with one exception discussed *infra* n.7, Mack has provided no allegations from which the Court could stretch counsel's alleged failures to Mack's decision to plead guilty. For example, Mack does not allege that counsel failed to investigate potential issues in the grand jury proceeding or to discuss those issues with Mack before Mack pleaded guilty, nor does Mack argue that if he had known about those alleged issues, he would have declined to plead guilty and insisted on proceeding to trial.[7] *See Hill*, 474 U.S. at 60 (finding the habeas petitioner failed to satisfy *Strickland*'s prejudice prong because he "did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty"); *cf. Nahodil*, 36 F.3d at 327 ("Nahodil's claim that 'defense counsel improperly advised

---

[7] To the contrary, at the end of his petition, Mack suggests that he was aware of the potential issues in the grand jury process and had concerns about the sufficiency of the government's evidence *before* he chose to plead guilty. (*See* Doc. No. 112 at 6 ("All Grounds in this instant motion have been previously raised to Counsel to be raised in federal court.").)

[him] to enter a plea of guilt[y] to the charges despite petitioner's repeated objections to doing so, and with clear understanding that [he] would not agree to admit his guilt to the charges,' implies that he would have proceeded to trial had his attorney not advised him to plead guilty. As we have noted, his presently asserted desire to have stood trial has a plausible foundation in the record, meaning that we cannot rule out that there was a reasonable probability that but for his counsel's allegedly constitutionally deficient advice he would have proceeded to trial.")

Although Mack has not specifically tied counsel's alleged pre-plea failures to his decision to plead guilty, he has broadly argued that defense counsel "coerced and 'brow-beat' [Mack] on a constant, incessant basis" to plead guilty, telling Mack, "If you [ ] don't take the plea agreement as written, to both Counts,[8] you could be facing decades in prison, perhaps even Life." (Doc. No. 112 at 5; *see also id.* ("Movant was coerced into the plea agreement with the threat of a draconian sentence").)  But counsel's assertion that Mack was facing "decades in prison, perhaps even Life," is an accurate summation of the risk Mack faced in rejecting the guilty plea.  In exchange for Mack accepting the plea offer, the "government agree[d] not to file an information, pursuant to 21 U.S.C. § 851, stating the defendant's prior serious drug felony convictions." (Doc. No. 73 at 4.)  If the government had filed a § 851 information, Mack would have faced a mandatory statutory term of imprisonment of "not less than 25 years" and not "more than life" because he had two or more prior convictions for serious drug felonies.  21 U.S.C § 841(b)(1)(A).  By pleading guilty, Mack ensured the government did not file the § 851

---

[8] This quote could be broadly read as suggesting that Mack's guilty plea was involuntary because he only pleaded guilty to Count II after his counsel refused to object to the basis of that Count.  Mack asserts that Count II is "for 500 grams or more distribution of methamphetamine," when "the ACTUAL weigh was 486 [sic] grams."  (Doc. No. 112 at 5.)  But contrary to Mack's assertion, Count II of the Indictment charges Mack with "knowingly and intentionally distribut[ing] . . . *50 grams or more*" of methamphetamine, not *500 grams or more*.  (Doc. No. 1 at 3 (emphasis added).)  Accordingly, defense counsel's advice for Mack to plead guilty to Count II as written was not deficient.

14

information and faced a mandatory minimum term of imprisonment of only 10 years. *See id.*

In addition, had Mack proceeded to trial and been found guilty, his advisory guideline range would have been higher because he would not have been entitled to a three-level downward reduction in his offense category for acceptance of responsibility. With a total adjusted offense level of 37 and a criminal history category of VI, Mack's guideline range would have been 360 months to life. U.S.S.G. Sentencing Table. By pleading guilty, Mack received the three-level reduction that resulted in the lesser advisory guideline imprisonment range of 262 months to 327 months. (Initial PSR ¶ 104); U.S.S.G. Sentencing Table.

Because defense counsel accurately and appropriately informed Mack of the substantial risks of rejecting the plea agreement, the Court cannot find counsel's advice fell "outside the range of competence demanded of attorneys in criminal cases." *Tollett*, 411 U.S. at 268; *see also Dixon v. United States*, 151 F. Supp. 3d 582, 598 (E.D. Pa. 2015) ("[B]ecause [counsel's] alleged statement that relevant conduct would be considered at sentencing was correct, [counsel's] performance was not deficient and cannot provide a basis for an ineffective assistance claim.").

For the reasons discussed above, the Court denies Mack's petition to the extent it challenges his conviction.

### C. Challenges to Mack's Sentence

Mack also argues that defense counsel rendered ineffective assistance in connection with sentencing because counsel failed to: (1) ensure the corrected presentence report reflected a total offense level of 32, not 37, (2) object to the application of a leadership enhancement, and (3) object to the Court's consideration of "a 15-year-old non-violent conviction which . . . triggered a career offender enhancement." (Doc. No. 110 at 8–12.) The Court addresses each argument in turn.

First, Mack argues that defense counsel gave ineffective assistance when he failed to

"correct [a] mistake presented in the Movant's Presentencing Report," which "listed [Mack] as having a [base] offense level of 37 points" which he claims "should have been 32 points." (Doc. No. 112 at 4.)  This argument fails because as the Court explained at sentencing and detailed in the fact section of this Memorandum, Mack's starting offense level was 37 because he is a career offender.[9]  Because the corrected presentence report accurately reflects his starting offense level (Rev. PSR ¶ 37), counsel reasonably refused to challenge the report on that ground.

Second, Mack argues that his attorney was ineffective because counsel failed to object to the application of a leadership enhancement to his base offense level.  Although counsel can render ineffective assistance by failing "to object to an improper enhancement under the Sentencing Guidelines," *Jansen v. United States*, 369 F.3d 237, 244 (3d Cir. 2004), here, defense counsel *vigorously* objected to the leadership enhancement before and during sentencing, and the Court sustained the objection.  (*See* Doc. No. 93 at 8–9; Sent'g Tr. at 36:4–37:7.)[10]  Accordingly, Mack's ineffective assistance of counsel claim fails on this ground as well.

Third, Mack argues that his counsel was ineffective because he failed to object to the Court's consideration of "a 15-year-old non-violent conviction which for all intents and purposes triggered a career offender enhancement." (Doc. No. 112 at 4.)  Again, Mack fails to show that counsel's performance was ineffective.  When Mack committed the current offenses, he had four prior adult convictions for violations of 35 Pa. Cons. Stat. § 780-113(a)(30), one of which

---

[9] Had Mack not been a career offender, his base offense level would have been 32, a fact reflected in the corrected presentence report.  (Rev. PSR ¶ 31.)  With a three-point reduction for acceptance of responsibility, his total offense level would have been 29.  Accordingly, if Mack was not a career offender, he would have had a total offense level of 29 and a criminal history category of VI, which would have placed Mack's advisory guideline range at 151 to 188 months' imprisonment.  U.S.S.G. Sentencing Table.

[10] As discussed above, the Court's decision to sustain the objection did not alter Mack's guideline range because as a career offender, his starting offense level was 37 regardless of the inclusion or exclusion of the leadership enhancement.

16

stemmed from an arrest in 2005, one from an arrest in 2006, and two from separate arrests in 2013. (Rev. PSR at 7 ¶¶ 43–44, 46–47.) Each of those convictions qualifies as a predicate offense for purposes of the career offender enhancement. *See* U.S.S.G. § 4B1.1(a) ("A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) *the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense*." (emphasis added)); *Glass*, 904 F.3d at 324 (holding that § 780-113(a)(30) "is a 'controlled substance offense' and may serve as a predicate offense to a career-offender enhancement under § 4B1.1"). Mack does not explain why counsel should have objected to consideration of his convictions in 2005 and 2006, each of which constitutes a "prior adult . . . state conviction" for a controlled substance offense. *See* U.S.S.G. § 4B1.2, *commentary* 1 (defining the phrase "prior felony conviction"); (*see also* Rev. PSR at ¶¶ 43–44 (showing Mack was born in 1986, and thus, was 18 years old on the date of his arrest for the 2005 conviction and 19 years old on the date of his arrest for the 2006 conviction). And even if the Court had not considered either the 2005 or the 2006 conviction for purposes of the enhancement, Mack would still qualify as a career offender based on his two 2013 arrests and subsequent convictions. *See* U.S.S.G. § 4B1.1(a). Because Mack has not shown that counsel acted deficiently when he failed to object to the Court's consideration of the convictions stemming from arrests in 2005 and 2006, or that Mack was prejudiced by counsel's failure, his ineffective assistance claim fails on this ground as well.

\* \* \*

For the reasons discussed above, the Court denies Mack's petition to the extent it challenges his sentence.

## III. CONCLUSION

Mack has failed to show that he is entitled to habeas relief. Because it is clear from "the motion and files and records of the case . . . that the movant is not entitled to relief," the Court need not hold an evidentiary hearing. *United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005) (quotation marks omitted). Mack's § 2255 motion is denied. Because jurists of reason would not debate the procedural or substantive dispositions of Petitioner's claims, there is no probable cause to issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate order follows.